UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRIAN TREMATORE PLUMBING & HEATING,
INC.,

                                   Plaintiff,

        v.

WALSH CONSTRUCTION GROUP, LLC, *et al.*,

                                   Defendants.

No. 19-CV-9764 (KMK)

OPINION & ORDER

Appearances:

David Russell Wise, Esq.
Mackey Butts & Wise
Millbrook, NY
*Counsel for Plaintiff*

Joshua E. MacKey, Esq.
Rivkin Radler LLP
Poughkeepsie, NY
*Counsel for Plaintiff*

James Joseph Barriere, Esq.
Chad Justin Caplan, Esq.
Hinckley Allen Snyder, LLP
Albany, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Brian Trematore Plumbing & Heating, Inc. ("Plaintiff") brings this Action against Walsh

Construction Group, LLC and Consigli Construction Co., Inc. ("Defendants"), alleging breach of

a construction subcontract, quantum meruit, negligent misrepresentation, trust fund diversion,

cardinal change, and constructive contract rescission.  (Second Am. Compl. ("SAC") (Dkt. No.

16).)  Before the Court is Defendants' Motion To Dismiss (the "Motion") pursuant to Federal

Rule of Civil Procedure 12(b)(6).  (Not. of Mot. (Dkt. No. 19).)  For the reasons that follow, the Motion is granted in part and denied in part.

## I.  Background

### A.  Factual Background

The following facts are taken from Plaintiff's Second Amended Complaint ("SAC"). They are assumed to be true for purposes of adjudicating the instant Motion.

This dispute relates to the construction of a medical center in Poughkeepsie, NY (the "Project").  (SAC ¶¶ 1, 10.)  Defendants have contracted to be construction managers of the Project (pursuant to the "Prime Contract"), which is owned by Nuvance Health Inc. (the "Owner").  (*Id*. ¶ 9.)  On January 13, 2017, Plaintiff subcontracted with Defendants (pursuant to the "Subcontract") to install plumbing at the Project for $17,895,000, excluding amounts related to change work orders.  (*Id*. ¶¶ 8, 13.)[1]

Plaintiff alleges seven causes of action.  (*See generally id*.)  Defendants move to dismiss only three of them: breach of contract due to defective design, quantum meruit, and negligent misrepresentation.

With regard to its defective design claim, Plaintiff alleges that CallisonRTKL ("CRTKL") designed the project.  (*Id*. ¶ 22.)  CRTKL provided its design to the Owner, which provided the design to Defendants.  (*Id*. ¶¶ 18, 22.)[2]  Per the Subcontract, the Project design was to be a certain level of development known as LOD300.  (*Id*. ¶ 20.)  "From the very outset of

---

[1] The scope of Plaintiff's work increased after the Owner announced on February 7, 2018 that it planned to build an eight-floor building rather than a seven-floor building.  (SAC ¶¶ 12, 14.)

[2] Defendants did not provide this design to Plaintiff until after Plaintiff had signed the Subcontract.  (*Id*. ¶ 19.)

work on the Project," Plaintiff realized that the level of development for the design "was not as promised in the Subcontract," and an independent expert confirmed this view. (*Id*. ¶¶ 21, 28–30.) The design was riddled with defects. For example, water and medical gas piping did not fit in the allocated space for large sections of the Project, (*id*. ¶ 31); the sanitary pipe outlet at the base of each of the 284 patient room toilets was directly above structural steel framing, (*id*. ¶¶ 32–33); the design had no ionization system to prevent legionella, (*id*. ¶¶ 37–39); HVAC systems and electrical components were improperly located, (*id*. ¶ 54); and other mechanical, electrical, and carpentry work interfered with installing headwalls and gas service outlet boxes and panels in patient rooms, (*id*. ¶¶ 56, 58). In addition, water was not on site until after August 9, 2019, requiring Plaintiff to perform smoke rather than water testing on the plumbing system, which caused delay and further expense. (*Id*. ¶¶ 41, 55.) Plaintiff further alleges that Defendants wastefully instructed it to use an unnecessarily difficult route for canopy drains. (*Id*. ¶¶ 49–51.) It further alleges that Defendants failed to adequately respond to Plaintiff's notice of design defects, including the toilet outlets located above the structural steel framing, (*id*. ¶ 35), and the interference of mechanical, electrical, and carpentry work with installing headwalls and gas service outlet boxes and panels, (*id*. ¶ 57).

With regard to its quantum meruit claim, Plaintiff alleges that, due to the Project's defective design, Plaintiff submitted 109 change orders. (*Id*. ¶¶ 42–43.) Defendants failed to approve many of these change orders. (*Id*. ¶ 44.) Plaintiff lists five unapproved change orders related to supply piping clarifications, damage to the framing podium and framing tower, relocation of 2-inch waste risers and other piping and fittings, and other changes. (*Id*. ¶¶ 45, 79.) Plaintiff performed this work, which it values at $363,332.93, even though the change orders are

unapproved and unresolved, and thus not incorporated into the Subcontract.  (*Id.* ¶¶ 77–78, 80–81.)[3]

With regard to its negligent misrepresentation claim, Plaintiff alleges that Defendants negligently misrepresented the Project's design, sequencing, scheduling, and coordination, causing Plaintiff damage.  (*Id.* ¶ 92.)

Plaintiff alleges four other causes of action.  It alleges breach of contract due to improper back charges and cuts of $13,278,432.  (*Id.* ¶ 66.)  For example, Defendants inappropriately cut an invoice submitted by Plaintiff for hardware, including shower diverters, (*id.* ¶¶ 67–68), and back charged Plaintiff for fireproofing, (*id.* ¶ 69).  These back charges were caused by Defendants' poor project planning and management, including their failure to timely reply to the 390 requests for information ("RFIs") submitted by Plaintiff to Defendants.  (*Id.* ¶¶ 62, 64–65.)  This failure threw off the sequencing of Plaintiff's work, and prevented it from completing certain work.  (*Id.* ¶¶ 70, 73–74.)  Plaintiff alleges that Defendants diverted $5,469,126.07 of funds owed to it, in violation of the New York State Lien Law, (*id.* ¶¶ 93–111), that Defendants' unanswered work orders and the inadequate level of design amounted to a cardinal change, (*id.* ¶¶ 112–22), and that the Subcontract was constructively rescinded in part because Plaintiff never received a LOD300 level of design as it required, (*id.* ¶¶ 123–40).

Plaintiff seeks damages, costs, and attorneys' fees, additional relief related to its cause of action pursuant to the New York State Lien Law, and interest.  (*Id.* at 21–23.)[4]

---

[3] Plaintiff alleges that Defendants have failed to approve several additional change orders, including related to an ionization system, (*id.* ¶ 37), and a triple reinstallation of pipe hangers, (*id.* ¶ 53).  It is not clear whether these unapproved change orders are among the five included in those mentioned previously.  (*See id.* ¶¶ 45, 79.)

[4] Here the Court refers to the ECF-generated page numbers in the upper right-hand corner of the page.

B.  Procedural Background

While Plaintiff's initial Complaint is dated October 22, 2019, it was filed on October 23, 2019.  (Dkt. No. 1.)  Plaintiff filed its First Amended Complaint a month later, on November 22, 2019.  (Dkt. No. 9.)  On December 17, 2019, Defendants submitted a pre-motion letter seeking leave to file a motion to dismiss Plaintiff's defective design, quantum meruit, and negligent misrepresentation claims.  (Dkt. No. 10.)  Plaintiff responded by letter dated December 19, 2019, (Dkt. No. 13), and the Court ordered a pre-motion conference, (Dkt. No. 15).  At the February 6, 2020, pre-motion conference, the Court provided Plaintiff one week to file a second amended complaint.  (*See* Dkt. (minute entry for Feb. 6, 2020).)  Plaintiff complied, filing its SAC on February 13, 2020.  (SAC.)  On February 19, 2020, Defendants filed a letter requesting that the SAC be struck or, in the alternative, that the Court order a briefing schedule on their Motion To Dismiss.  (Dkt. No. 17.)  The Court ordered a briefing schedule the next day.  (Dkt. No. 18.)  Defendants submitted the Motion on March 10, 2020.  (Not of Mot.; Affirmation of James J. Barriere, Esq. in Supp. of Mot. ("Barriere Affirmation") (Dkt. No. 20); Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 21).)  On March 24, 2020, Plaintiff opposed.  (Affirmation of Joshua E. MacKey, Esq. in Opp'n to Mot. ("MacKey Affirmation") (Dkt. No. 22); Mem. of Law in Opp'n to Mot. ("Pl.'s Mem.") (Dkt. No. 23).)  Defendants filed their Reply on March 31, 2020.  (Reply Mem. of Law in Further Supp. of Mot. ("Defs.' Reply") (Dkt. No. 24).)

## II.  Analysis

A.  Standard of Review

When ruling on a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).  The Court, however, is not required to credit

"mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555
(2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter,
accepted as true, to state a claim to relief that is plausible on its face."  *Id.* at 678 (quotation
marks omitted).  A claim is facially plausible "when the plaintiff pleads factual content that
allows the [C]ourt to draw the reasonable inference that the defendant is liable for the
misconduct alleged."  *Id.*  Specifically, the plaintiff must allege facts sufficient to show "more
than a sheer possibility that a defendant has acted unlawfully," *id.*, and if the plaintiff has not
"nudged [his] claims across the line from conceivable to plausible, [the] complaint must be
dismissed," *Twombly*, 550 U.S. at 570.

On a Rule 12(b)(6) motion to dismiss, the question "is not whether a plaintiff will
ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."
*Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012).  Accordingly, the "purpose
of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal
sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding
its substantive merits."  *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quotation marks
omitted).  To decide the motion, the Court "may consider the facts as asserted within the four
corners of the complaint together with the documents attached to the complaint as exhibits, and
any documents incorporated in the complaint by reference."  *Peter F. Gaito Architecture, LLC v.
Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (quotation marks omitted).

B.  Application

Defendants argue that Plaintiff's design defect claim should be dismissed because
Plaintiff does not allege that Defendants had control over the design, (Defs.' Mem. 5–6); that

6

Defendant's quantum meruit claim is barred by the Subcontract, (*id*. at 7–9); and that Plaintiff's negligent misrepresentation claim fails because Plaintiff does not allege a duty independent of the Subcontract, (*id*. at 10–11), and because Plaintiff does not allege any specific false statements, (*id*. at 11–12).  The Court considers each argument to the extent necessary.

### 1.  Design Defect

Defendants argue that Plaintiff's design defect claim should be dismissed because Plaintiff does not allege that Defendants had control over the design.  (*Id*. at 5–6.)  The Court agrees.

Defendants rely primarily on the New York Court of Appeals' case *Triangle Sheet Metal Works, Inc. v. James H. Merritt & Co*., which holds that "absent a contractual commitment to the contrary, a prime contractor is not responsible for delays that its subcontractor may incur unless those delays are caused by some agency or circumstance under the prime contractor's direction or control."  588 N.E.2d 69, 70 (N.Y. 1991) (citation omitted).  The *Triangle Sheet Metal* court continued that "[i]f a subcontractor wants a prime contractor to be a guarantor of job performance, it should bargain for the inclusion in its subcontract of a provision to that effect."  *Id*.  At least one court has suggested that this principle applies to delays caused by design defects.  *See Phoenix Elec. Contracting, Inc. v. Lehr Const. Corp*., 631 N.Y.S.2d 146, 146–47 (App. Div. 1995) (finding no general contractor liability for "delay damages allegedly sustained by . . . the electrical subcontractor[] as a result of . . . design and engineering changes ordered . . . after commencement of the project").  The Second Circuit has recognized *Triangle Sheet Metal* as a rule for "apportioning damages according to the relative fault of" the general contractor.  *Thalle Const. Co. v. Whiting-Turner Contracting Co*., 39 F.3d 412, 418 (2d Cir. 1994); *see also Port Chester Elec. Const. Corp. v. HBE Corp*., 978 F.2d 820, 822 (2d Cir. 1992) (directing the

district court to "determine which, if any, of the alleged delays were attributable in whole or in part to [the general contractor], and limit [the plaintiff's] recovery accordingly").  At the motion to dismiss stage, Plaintiff could satisfy this standard by alleging "that [Defendants] caused the delay damages."  *William A. Gross Const. Assocs., Inc. v. Am. Manufacturers Mut. Ins. Co.*, No. 07-CV-10639, 2009 WL 427280, at *8 (S.D.N.Y. Feb. 23, 2009).

Plaintiff's Opposition cites only irrelevant case law.  (*See* Pl.'s Mem. 3–8.)  First, it cites a case concluding that actual notice cured a plaintiff's failure to comply with a contractual notice clause.  *U.S. for Use & Benefit of Petrocelli Elec. Co. v. Crow Const. Co*., No. 93-CV-8387, 1999 WL 791683, at *4 (S.D.N.Y. Oct. 5, 1999).  (*See* Pl.'s Mem. at 4.)  Second, it cites the same case describing when a "no damages for delay" contractual provision can be ignored.  *Crow Const. Co*., 1999 WL 791683, at *5; *see also U.S. for Use & Benefit of Evergreen Pipeline Const. Co. v. Merritt Meridian Const. Corp*., 95 F.3d 153, 167 (2d Cir. 1996) (same); *Arnell Constr. Corp. v. N.Y.C. Sch. Constr. Auth*., 112 N.Y.S.3d 169, 172–73 (App. Div. 2019) (explaining limits to "no damages for delay" contractual provisions).  (*See* Pl.'s Mem. 4–7.)  Neither a notice clause nor a "no damages for delay" clause is at issue in the Motion.  (*See* Defs.' Reply 1–3.)  Nor does the court in *Crow Const. Co.* suggest that "notifying a prime contractor of alleged deign defects could make a prime contractor liable for an entire project design," a holding that Defendants' correctly argue would render meaningless the rule from *Triangle Sheet Metal*.  (*Id*. at 2.)

Plaintiff refers to contractual provisions suggesting that Defendants own the Project design.  (*See* Pl.'s Mem. 6–7; *see also* Barriere Affirmation Ex. B ("Subcontract") 21 (Dkt. No.

20-4).)[5]  However, the SAC does not allege that such ownership makes Defendants responsible for design defects.  (*See generally* SAC.)  Nor does the Subcontract suggest as much on its face. Indeed, the referenced provision appears to simply reserve to Defendants various rights, including "unrestricted use of the models and sale of the models to third parties for their unrestricted use."  (Subcontract 21 (Dkt. No. 20-4).)

Finally, Plaintiff does not allege that it "bargain[ed]" for Defendants "to be . . . guarantor[s] of job performance."  *Triangle Sheet Metal*, 588 N.E.2d at 70.  Thus, Plaintiff's first cause of action for defective design is dismissed.[6]

### 2.  Quantum Meruit

Defendants argue that Plaintiff cannot maintain its cause of action for quantum meruit because of the Subcontract.  (Defs.' Mem. 7–9.)  At this early stage, the Court disagrees.

"Recovery under the theory of quantum meruit is not appropriate where . . . an express contract governed the subject matter involved."  *Parker Realty Grp., Inc. v. Petigny*, 929 N.E.2d 387, 387 (N.Y. 2010); *see also Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987) (holding, where the plaintiff chooses to perform on the contract and sue to recover damages, that it is "limited to recovery of damages on the contract, and may not seek recovery based on an alleged quasi contract").  Courts have extended this principle to

---

[5] In referring to the Subcontract, the Court refers to the ECF-generated page number in the upper right-hand corner along with the docket number.

[6] The Motion focuses narrowly on Defendants' lack of involvement with "the incomplete and incorrect design provided by the Owner."  (Defs.' Mem. 3.)  Thus, this Opinion & Order takes no position on Plaintiff's allegations about Defendants' conduct that are made under the heading of its defective design cause of action, but realleged in its subsequent causes of action. These include that Defendants failed to approve change orders, (SAC ¶¶ 37, 45, 53), gave wasteful instructions, (*id.* ¶¶ 49–51), and failed to respond to Plaintiff's notices of design defects, (*id.* ¶¶ 35, 57).

circumstances "where there exists a contract governing how payment for extra work will be determined." *Aviv Const., Inc. v. Antiquarium, Ltd.*, 687 N.Y.S.2d 344, 345 (App. Div. 1999); *see also Gemma Power Sys., LLC v. Exelon W. Medway II, LLC*, No. 19-CV-705, 2019 WL 3162088, at *5 (S.D.N.Y. July 1, 2019) (same); *LeChase Constr. Servs., LLC v. Escobar Constr., Inc.*, No. 18-CV-1021, 2019 WL 2743637, at *8–9 (N.D.N.Y. July 1, 2019) (dismissing quantum meruit claim where "the [s]ubcontract . . . contemplated extra work"), *reconsideration denied*, 2019 WL 6836990 (N.D.N.Y. Dec. 16, 2019).  Defendants argue that the Subcontract contains such a clause.  (*See* Subcontract 7 (Dkt. No. 20-2) ("No . . . adjustment [in the Subcontract amount or schedule of work] shall be made for any such changes performed by the [Plaintiff] that have not been so ordered by the [Defendants] in writing.").)

However, "[w]here there is a bona fide dispute as to [1] whether a relevant contract exists or [2] covers the disputed issue . . . courts have permitted plaintiffs to pursue both unjust enrichment and breach of contract claims." *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 471–72 (S.D.N.Y. 2014).  In such circumstances, courts regularly allow plaintiffs "to plead both contract and quasi-contract claims in the alternative."  *Beach v. Touradji Cap. Mgmt. L.P.*, 927 N.Y.S.2d 41, 42 (App. Div. 2011); *Gemma Power Sys.*, 2019 WL 3162088, at *12 (holding that "at an early stage in litigation, it may be possible to plead both [a quasi-contract claim and a breach of contract claim] in the alternative—provided there is" one of several types of dispute, including "a bona fide dispute about the existence of a contract" or "a bona fide dispute about whether the contract covers the full scope of a plaintiff's allegations"); *Szymczak v. Nissan N. Am., Inc.*, No. 10-CV-7493, 2011 WL 7095432, at *20 (S.D.N.Y. Dec. 16, 2011) (holding that, even though "[u]nder New York law, a party cannot be successful on both a breach of contract claim and a claim for unjust enrichment," that "[the] [p]laintiffs' alternative claims for breach of

10

contract and for unjust enrichment can and should survive to discovery, and . . . will not be

dismissed for having been pleaded in the alternative"); *Air Atlanta Aero Eng'g Ltd. v. SP*

*Aircraft Owner I, LLC*, 637 F. Supp. 2d 185, 195–96 (S.D.N.Y. 2009) ("Courts have permitted

pleading in the alternative in the face of a written agreement, however, when there is a dispute as

to the agreement's validity or enforceability.").  Plaintiff argues that the Subcontract does not

cover unapproved and unresolved change orders.  (Pl.'s Mem. 9.)

      While the Parties' briefing focuses on whether the Subcontract covers the unapproved

and unresolved change orders, the Court takes no stance on this issue, because at this stage the

validity of the Subcontract remains in dispute.  Plaintiff's sixth and seventh causes of action—

alleging a cardinal change and constructive contract rescission—both claim that the Subcontract

is invalid.  (*See* SAC ¶¶ 112–40.)  If Plaintiff prevails on one or both of these causes of action, it

may be able to recover in quantum meruit.  *See Laquila Grp., Inc. v. Hunt Const. Grp., Inc*., 997

N.Y.S.2d 99, 2014 WL 2919334, at *11–12 (N.Y. Sup. 2014) ("As the plaintiff's surviving

cardinal-change claim preserves the possibility of quasi-contractual recovery, dismissal must

also be denied as to plaintiff's quantum meruit . . . claims. . . . [T]he finding of an absence of a

valid, enforceable contract, a prerequisite to quantum meruit recovery, would inherently render

[the Subcontract's extra work clause] unenforceable . . . ."); *Eli Attia Architects v. Safra*, No. 94-

CV-2928, 1996 WL 480721, at *6 (S.D.N.Y. Aug. 23, 1996) ("The doctrine of quantum meruit

allows a plaintiff to recover even where an express contract has been rescinded . . . .").[7]  Thus, at

this early stage, the Court declines to dismiss Plaintiff's quantum meruit claims.

---

     [7] The Court likewise rejects Defendants' argument that, because it explicitly incorporates
Plaintiff's breach of contract claims, Plaintiff's quantum meruit count is "internally inconsistent
and subject to dismissal."  (*See* Defs.' Mem. 8.)  *See Aviv Constr.*, 687 N.Y.S.2d at 345.  The
Court will not adopt this unnecessarily formalist view at the cost of not allowing Plaintiff to
plead alternative theories of liability.  *See Kruse v. Wells Fargo Home Mortg., Inc*., 383 F.3d 49,

### 3. Negligent Misrepresentation

Defendants argue that Plaintiff's negligent misrepresentation claim fails because it does not allege a duty independent of the Subcontract, (Defs.' Mem. 10–11), and because Plaintiff does not allege any specific false statements, (*id.* at 11–12). The Court agrees with Defendants' second argument, and thus does not address its first.

To plead a claim for negligent misrepresentation, Plaintiff must allege "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014).

Plaintiff fails to allege that specific representations were incorrect. Instead, it vaguely alleges "negligent misrepresentation with regard to the Project's design, sequencing, scheduling[,] and coordination." (SAC ¶ 92.) Indeed, the SAC does not allege any specific representations made by Defendants. (*See generally id.*) This level of generality does not plausibly allege a misrepresentation. *See Bel Canto Design, Ltd. v. MSS HiFi, Inc.*, No. 11-CV-6353, 2012 WL 2376466, at *16 (S.D.N.Y. June 20, 2012) (holding that the plaintiff must allege "where, when and to whom" a statement was made to "plausibly state[] a claim for relief"); *cf. In re Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 345, 352 (S.D.N.Y. 2015) (affirming a bankruptcy court's finding that alleged misrepresentations were "conclusory" where "[the] [c]omplaint [did] not provide any specific misrepresentations"). The SAC's most specific claim is that "[t]he Project design under the Subcontract was to be . . . LOD300," (SAC ¶ 20), that this level of development was "promised in the Subcontract," (*id.* ¶ 21), and that the Project design did not

---

55 n.3 (2d Cir. 2004) ("Federal Rule of Civil Procedure 8(e)(2) permits pleading inconsistent theories in the alternative.").

meet this standard, (*id.* ¶¶ 28–30).  But the SAC does not allege a specific representation

regarding the level of design in the Subcontract.  (*See* SAC.)[8,9]  And the SAC's "sparse and

conclusory allegations" do not suffice to plead an actionable misrepresentation.  *Lenard v.*

*Design Studio*, 889 F. Supp. 2d 518, 531 (S.D.N.Y. 2012).  Finally, while the Parties dispute

whether the heightened pleading standard for alleging fraud under Rule 9(b) applies, (Defs.'

Mem. 11–12; Pl.'s Mem. 12), *see* Fed. R. Civ. P. 9, the Court finds that "even assuming that 9(b)

does not apply, plaintiff should at least identify the statement(s) upon which it is basing the

claim." *@Wireless Enterprises, Inc. v. AI Consulting, LLC*, No. 05-CV-6176, 2006 WL

3370696, at *13 n.12 (W.D.N.Y. Oct. 30, 2006).[10]  Thus, Plaintiff's negligent misrepresentation

claim is dismissed.

### III.  Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss is granted in part and denied

in part.  It is granted with respect to Plaintiff's defective design and negligent misrepresentation

---

[8] Nor is such a representation obvious from reviewing the Subcontract.  The Subcontract does state that "[t]he [Defendants'] Modeling and Building Information Modeling process aims to improve construction delivery by enhancing quality and creating efficiencies."  (Subcontract 16 (Dkt. No. 20-4).)  But this does not appear to promise a particular level of development.

[9] Because the Court takes no position on Defendants' alternative argument, it assumes without deciding that a misrepresentation made within the Subcontract may be the basis of a negligent misrepresentation claim.  *Cf. Duane Thomas LLC v. 62 Thomas Partners, LLC*, 751 N.Y.S.2d 441, 442 (App. Div. 2002) (finding that the plaintiff could not maintain a cause of action for fraud because their claim was "based solely on alleged misrepresentations in the contract . . . [and] the complained-of misrepresentations [were] not collateral or extraneous to the contract").

[10] The Court does not find persuasive cases from prior to *Twombly* that did not require that misrepresentations be pleaded with specificity.  *See, e.g.*, *Bruno v. Shoreline Oil Co.*, No. 87-CV-9175, 1988 WL 142476, at *4 (S.D.N.Y. Dec. 27, 1988) (holding that a "complaint [that] sets forth conclusory allegations . . . , but does not allege any specific misrepresentations" is "sufficient to withstand a motion to dismiss, [but] these allegation alone would most likely not withstand a motion for summary judgment").

claims.  It is denied with respect to Plaintiff's quantum meruit claim.  Because this is the first

adjudication of Plaintiff's defective design and negligent misrepresentation claims, those claims

are dismissed without prejudice.  Plaintiff may file an amended complaint within 30 days of the

date of this Opinion & Order.  The Court will hold a conference on June 8, 2021 at 10:00 A.M.

      The Clerk of the Court is respectfully requested to terminate the pending Motion, (Dkt.

No. 19).

SO ORDERED.

DATED:      March 31, 2021
             White Plains, New York

                                    KENNETH M. KARAS
                                    UNITED STATES DISTRICT JUDGE